IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PHILLIP M. HUDSON,

                Plaintiff,                         OPINION and ORDER

       v.                                       08-cv-458-bbc

DYLON RADTKE and GUS GRAACK,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

On August 21, 2007, correctional officers confiscated a number of publications from plaintiff Phillip Hudson because he had more than he was allowed under prison rules. Plaintiff asked defendants Dylon Radtke and Gus Graack (both correctional officers) to return two books, <u>The Noble Quran</u> and <u>Two Faces of Islam</u>, but they failed to do so. Plaintiff filed this lawsuit under the Religious Land Use and Institutionalized Persons Act, contending that defendants substantially burdened his ability to practice Islam without a narrowly tailored compelling state interest.

Before the court are the parties' cross motions for summary judgment and plaintiff's motion to reconsider a portion of the screening order in this case. (In addition, plaintiff has filed a motion to remove the assistant attorney general from the case, dkt. #33, a motion for

1

sanctions, dkt. #34, and a motion to strike defendants' pleadings, dkt. #41, but those motions are frivolous and do not require any discussion.) Plaintiff's motion for reconsideration will be denied as untimely; defendants' motion for summary judgment will be granted and plaintiff's motion for summary judgment will be denied because plaintiff has failed to adduce any evidence that defendants substantially burdened his religious exercise.

The undisputed facts are set forth below. I have taken the facts from defendants' proposed findings of fact and the record because plaintiff's proposed findings of fact do not comply with this court's procedures and are nearly incomprehensible. Plaintiff did not make a good faith effort to limit each proposed fact "to a single factual proposition." Procedure to be Followed on Motions for Summary Judgment, I.B.1. Instead, his proposed facts are long, rambling and argumentative. For example, plaintiff's PFOF #2 states:

> With regards to the above (No. 1), two days later, dated Aug. 24, 2007, additional evidence shows that, the plaintiff "revised" his "request of (8-22-07)" because, he "realized" another book was "missing" called: "Two Faces of Islam." (See, Exhibit 169, Affidavit, No. 4), as this exhibit instructed (Graack) that "The seg property request (Exhibit 170) – Affidavit, No. 5) was attached. Do take notice that, in (Exhibit 169) there is an appeal to the defendant Graack to – "Disregard the Request of August 22, 2007," which the defendants admitted to, and they connected to "Graack). So telling him to "Disregard the Request of August 22, 2007," is clearly referring to Graack. Yet, the defendants in their Answer at (Nos. 13), are evasive, and they do not answer this separately, nor do they answer (No. 14), as (No. 15) isn't answered at all. However, they do say they "put the plaintiff to his proof." If the court will note again, (Exhibit 168) that the defendants admit to, (No. 12 – Answer). Note in this exhibit that, the plaintiff "refused to sign the property form for destruction of my books." (See this at No. 1), and note also that, this is also indicated in the (Civil Complaint, No. 14). It is also mentioned in (Exhibit 171) – "you marked

2

to be destroyed;" This was further mentioned in (Exhibit 173A and (b) pg. 2), noting, not once did Graack dispute this, when he or Radtke was sent correspondences. According to Wisconsin Law (s. 904.01), this is "relevant evidence," directed to the defendants, who are evasive, yet, at the same time stating that, the "(Exhibits 169, 170, 171 and 172, speak for themselves." (See Answer, No. 13). But the fact remains that (Exhibits 167 and 168) connect (Graack) to the confiscation, and that, (Exhibits 169 and 170, 171, 172) are appeals to Graack to return the books that he never responded to, not once, because those property request (Exhibits 167, 170 172) have to be dated, when the property was "issued", as well as the "time issued," and the plaintiffs signature, when it was "received," and there exists no documentation showing that Graack or anyone else in the DS2 seg unit, from my first request (Exhibit – 167), they "admit" to, can show that plaintiff's books were returned. (See, Affidavit Nos. 2-8).

This is one of plaintiff's *shorter* proposed findings of fact. Others go on for several pages. None of his proposed facts are presented in a manner that would allow defendants to respond to them intelligently. Accordingly, I agree with defendants that plaintiff's proposed findings of fact should be disregarded. Fabriko Acquisition Corporation v. Prokos, 536 F.3d 605, 607-08 (7th Cir. 2008) (district court properly disregarded proposed facts that failed to comply with court's summary judgment procedures). However, I have considered plaintiff's responses to defendants' proposed findings of fact when plaintiff included an appropriate citation to the record.

UNDISPUTED FACTS

In August 2007, plaintiff Phillip Hudson was incarcerated in administrative confinement at the Columbia Correctional Institution in Portage, Wisconsin. On August

3

19, prisoners received a notice from the warden that a prison-wide cell search was going to be conducted. The notice included the following information:

> Inmates who have property that is not within allowable limits such as letters, publications, etc., are required to sort these items according to allowable limits before the property is removed from the cell. This will allow inmates to determine which individual items are kept and which must be disposed of, according to policy guidelines. ***If these items are not separated, staff searching the property will make this determination.***

Where plaintiff was housed, prisoners were allowed to keep the following reading materials: one state-issued chapel library book, one dictionary, legal materials within the fire-safety standards, fifteen personal letters, four magazines, four newspapers, two state-issued library and school books and two religious texts.

When plaintiff's cell was searched on August 21, 2007, he had 18 publications more than he was allowed. Defendant Gus Graack, a correctional officer, collected plaintiff's publications in a crate so that plaintiff could decide which items he wanted to keep within allowable limits. (Plaintiff denies that The Noble Quran and Two Faces of Islam were included in the crate. Plaintiff also seems to argue that defendant Graack chose for himself which publications plaintiff could keep, but plaintiff adduces no admissible evidence in support of that argument. It is not included in his affidavit and the letters and grievances he wrote are inadmissible to prove the truth of a matter because they are hearsay. Fed. R. Evid. 801 and 802.) The remaining 18 publications were taken away.

On August 22, plaintiff submitted a "segregation property request" to defendant Graack, in which he sought the return of seven items, one of which was The Noble Quran. On August 24, plaintiff submitted another request in which he wrote that he "just realized that [his] book Two Faces of Islam is missing." He substituted a new list of items he wanted Graack to return, including The Noble Quran and Two Faces of Islam. (The record is not clear, but it seems that defendant Graack did not respond to these requests.)

In a letter dated September 8, 2007, plaintiff wrote to defendant Dylon Radtke, a supervising correctional officer, seeking the return of The Noble Quran, Two Faces of Islam and several other publications. Radtke met with plaintiff on September 19, confirming that the books could not be returned.

Plaintiff's confiscated publications were placed in a property room along with hundreds of bags containing excess prisoner property discovered during the search. After the property was confiscated, no prisoner was allowed to change his mind and retrieve an item.

In mid-September, plaintiff wrote to the warden complaining that his religious books were being wrongfully withheld. In a response dated September 20, 2007, the warden wrote the following: "Issues related to your property from the institution search need to be addressed through the Chain of Command posted on your unit. After you have exhausted the chain of command, you can file an offender complaint."

On September 20, 24 and 27, plaintiff sent requests to defendant Radtke, asking him

5

to return "documents" and "exhibits" needed to "complete the chain of command." When Radtke did not respond, plaintiff wrote the warden again. The warden responded in a letter dated October 3: "I have been informed that your documents were returned to you." When plaintiff wrote back that he had not yet received his documents, the warden wrote in a letter dated October 15 that he was referring the matter to defendant Radtke for resolution.

On October 15, 2007, plaintiff filed an inmate complaint, in which he said that defendant Graack and "other correctional officers" had "no right to withhold" his religious books. The inmate complaint examiner rejected plaintiff's complaint as untimely under Wis. Admin. Code § DOC 310.11(5)(d), which requires a prisoner to submit an inmate complaint within "14 calendar days from the date of the occurrence giving rise to the complaint." The rejection was affirmed on appeal despite plaintiff's argument that his complaint was timely because it raised "an ongoing issue" that he had been raising "through the chain of command."

OPINION

A. Motion for Reconsideration

On May 29, 2009, plaintiff filed a "motion for reconsideration" of the order in which I screened his complaint under 28 U.S.C. § 1915. In that order, I dismissed plaintiff's claim that prison officials were interfering with his right to have a halal diet by failing to provide

6

a substitute when pork was served. Dkt. #6. I concluded that plaintiff had failed to state a claim upon which relief may be granted because he acknowledged that additional food was included in meals on days that pork was served to insure that prisoners observing halal received adequate nutrition. His only complaint was that *all* prisoners received extra food, but that was not a violation of his free exercise rights because it did not prevent him from practicing his religion. In addition, it was not a violation of his right to equal protection of the laws because he was not being treated differently from other prisoners.

Plaintiff's motion for reconsideration has multiple problems, but the only one I need address is its untimeliness. I screened plaintiff's complaint in an order dated August 26, 2008. He fails to explain why he waited nine months to file a motion for reconsideration, a week after briefing was complete on defendants' motion for summary judgment. That is far too late to start again. Cf. EEOC v. Lee's Log Cabin, Inc., 546 F.3d 438, 443 (7th Cir. 2008) (district court may "regard . . .as too late" proposed amendment to complaint raised after motion for summary judgment is filed).

In his motion, plaintiff includes new allegations about events that have occurred since he filed his complaint in this case. If plaintiff believes that circumstances have changed (in the sense that prison officials are no longer providing him with an adequate diet), he must file a new lawsuit and pay a separate filing fee, after he has exhausted his available administrative remedies as required by 42 U.S.C. § 1997e(a).

7

B. <u>Cross Motions for Summary Judgment</u>

1. <u>Exhaustion of administrative remedies</u>

I must address first defendants' argument that plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). <u>Perez v. Wisconsin Dept. of Corrections</u>, 182 F.3d 532, 535 (7th Cir. 1999) (district courts lack discretion to decide claim on merits unless exhaustion requirement has been satisfied). Defendants argue that plaintiff did not comply with § 1997e(a) because he filed his inmate complaint more than 14 days after his books were confiscated, in violation of Wis. Admin. Code § DOC 310.11(5).

One problem with defendants' argument is that I rejected it in the August 26, 2008 screening order. In that order, I wrote:

> [Plaintiff] admits in his complaint that his grievance regarding the religious books was rejected on the ground that it was untimely. However, I cannot conclude that it would be appropriate to dismiss this claim for [plaintiff]'s failure to administratively exhaust it. [Plaintiff] complained in his grievance that his religious books were being improperly withheld *at the time he filed the grievance*. Thus, [plaintiff] was complaining not just of a discrete past act but of an ongoing violation and the examiner was wrong to reject the grievance on timeliness grounds.

<u>Hudson v. Grams</u>, 08-cv-458-bbc, slip op. at 8 (W.D. Wis. Aug. 26, 2008).

Defendants do not point out any errors in this conclusion or even address it in their motion for summary judgment. If anything, the record developed since the screening order confirms that dismissal under § 1997e(a) would be improper. The facts show that plaintiff

8

was attempting to resolve his grievance through "the chain of command" before filing his grievance, which was exactly what the warden told him to do. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (dismissal not appropriate when prisoner failed to complete grievance process because of misinformation provided by prison officials). This is not a case in which the prisoner is failing to provide proper notice, brazenly disregarding prison rules or sleeping on his rights. Woodford v. Ngo, 548 U.S. 81, 88-89 (2006)(dismissal for prisoner's failure to "properly" exhaust is necessary to "discourag[e] disregard of the agency's procedures"). Rather, plaintiff seems to have tried conscientiously to resolve his complaint multiple times informally, only filing a formal grievance when it became clear that the alternatives were unsuccessful. Accordingly, I conclude that defendants have failed to meet their burden to show that plaintiff failed to comply with § 1997e(a).

2. Substantial burden on a religious exercise

A threshold question for a claim brought under RLUIPA is whether the plaintiff has proven that prison officials "substantially burdened" his religious exercise. Koger v. Bryan, 523 F.3d 789, 797-98 (7th Cir. 2008); Vision Church v. Village of Long Grove, 468 F.3d 975, 996-97 (7th Cir. 2006). The answer in this case is no. Even if I look directly to plaintiff's affidavit and supporting exhibits, he has adduced no evidence showing that defendants burdened his ability to exercise his religion, substantially or otherwise.

To begin with, plaintiff points to no admissible evidence in the record that he even *possessed* copies of The Noble Quran or Two Faces of Islam before his cell was searched or that defendant Graack took either book from him. He avers in his affidavit that he has those books *now* and the documentary evidence shows that he *complained* about not having the books. (Again, allegations in his grievances and letters are hearsay and are not admissible to prove the truth of a matter.) However, plaintiff is curiously silent in his affidavit on the question whether he actually had the books before August 21, 2007. In fact, plaintiff alleges that the two books were *not* in the crate of his confiscated books, which could support a view that he did not have the books in the first place or at least that defendant Graack never confiscated those two books.

In any event, plaintiff cannot prevail even if I assume that he had the two books because he adduces no admissible evidence showing how the absence of the books had any effect on his ability to practice his religion. (In fact, plaintiff does not even say that he is a Muslim, except in his brief. However, defendants do not challenge the sincerity of plaintiff's religious beliefs, so I do not consider that question. Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 736 (7th Cir. 2006).) Plaintiff fails to explain how the books were part of a religious exercise. A court may not assume that a book is used in furtherance of a religious exercise simply because the book has a religious topic. Many books may be informative about a particular religion without influencing the way in which a particular individual

10

practices that religion. Plaintiff does not say whether <u>The Noble Quran</u> includes the text of the Quran itself or is commentary about the Quran. Even if it is the former, I cannot speculate about ways that plaintiff would have used the book. <u>Davis v. Carter</u>, 452 F.3d 686, 697 (7th Cir. 2006) ("[W]hen the evidence provides for only speculation or guessing, summary judgment is appropriate."). It was plaintiff's obligation on summary judgment to prove his claim, not defendants' obligation to disprove it. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24(1986).

In one of his briefs, plaintiff says he wanted the books for Ramadan, dkt. #30, at 5, but there are three problems with this. First, the only evidence plaintiff cites for this proposition is an "Interview/Information Request," which is hearsay. Second, even if plaintiff's evidence were admissible, it would not be sufficient to defeat defendants' motion for summary judgment. Plaintiff did not explain in his request form or his brief *how* he would use the books to help him observe Ramadan. Under Fed. R. Civ. P. 56(e)(2), plaintiff is required to come forward with "specific facts" in support of his claim. <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888-89 (1990) ("The object of [summary judgment] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Thus, it is not enough for plaintiff simply to say in conclusory fashion that books will help him observe a religious holiday in some unknown way. Rather, he must provide enough detail to permit a conclusion that the confiscation of the books had a "direct,

11

primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003); see also Koger, 523 F.3d at 798-99 (applying Civil Liberties standard to prisoner RLUIPA claim). Third, even if I assume that plaintiff needed the Quran to observe Ramadan properly, he fails to adduce any evidence that another copy was unavailable to him, either in his own collection or in the prison library. Patel v. Bureau of Prisons, 515 F.3d 807, 815 (8th Cir. 2008) (prisoner's religious exercise not substantially burdened unless he "has exhausted alternative means of accommodating his religious . . . needs").

Finally, even if I assume that plaintiff's religious exercise was substantially burdened without the two books, plaintiff has failed to show that it was *defendants* who imposed this burden. Plaintiff was given an opportunity to prioritize his books before they were confiscated. Despite his argument in his briefs about a conspiracy, he has adduced no evidence that either defendant is responsible for preventing him from keeping either book. At most, they declined to search for his book when he reported them missing. Thus, defendants' actions could be characterized as a failure to *accommodate* plaintiff's religious exercise, but they are not the source of any burden that plaintiff experienced.

Instead of focusing on the elements of his claim, plaintiff's almost exclusive focus is on the question whether his books were destroyed or returned to him. This is puzzling, particularly because plaintiff's position seems to be that he got his books back even before

12

he filed his grievance in October 2007. If that is true, it would seem to *undermine* his claim because it would mean than any deprivation he suffered was short term.

In any event, the issue is a red herring. It makes no difference to plaintiff's claim whether defendants are or are not mistaken in their belief that plaintiff's books were destroyed along with the excess property of other prisoners. Either way, plaintiff must show that defendants substantially burdened his religious exercise, something he has failed to do.

ORDER

IT IS ORDERED that

1. Plaintiff Phillip Hudson's motions for summary judgment, dkt. #18, to remove the assistant attorney general from the case, dkt. #33, for sanctions, dkt. #34, and for reconsideration of the screening order, dkt. #45, are DENIED.

2. The motion for summary judgment filed by defendants Gus Graack and Dylon Radtke, dkt. #22, is GRANTED.

3. The clerk of court is directed to enter judgment in favor of defendants and close

this case.

      Entered this 5th day of June, 2009.

                            BY THE COURT:

                            /s/

                            _____
                            BARBARA B. CRABB
                            District Judge